Case No. 24-1097

_____

## UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

_____

VETERANS GUARDIAN VA CLAIM CONSULTING LLC;
JOHN F. RUDMAN; ANDREW JESUS SOTO,

Appellants,

v.

MATTHEW J. PLATKIN, IN HIS OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF NEW JERSEY,

Appellee.

_____

On Appeal from the United States District Court
for the District of New Jersey, Case No. 3:23-cv-20660

_____

## BRIEF AMICUS CURIAE OF
## PACIFIC LEGAL FOUNDATION
## IN SUPPORT OF APPELLANTS
## AND REVERSAL

_____

Caleb R. Trotter
Cal. Bar No. 305195
PACIFIC LEGAL FOUNDATION
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
(916) 419-7111
CTrotter@pacificlegal.org

*Attorney for Amicus Curiae*

## United States Court of Appeals for the Third Circuit

## Corporate Disclosure Statement and
## Statement of Financial Interest

No. <u>24-1097</u>

VETERANS GUARDIAN VA CLAIM CONSULTING LLC;
JOHN F. RUDMAN; ANDREW JESUS SOTO

v.

MATTHEW J. PLATKIN, IN HIS OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF NEW JERSEY

<u>Instructions</u>

Pursuant to Rule 26.1, Federal Rules of Appellate Procedure any nongovernmental corporate party to a proceeding before this Court must file a statement identifying all of its parent corporations and listing any publicly held company that owns 10% or more of the party's stock.

Third Circuit LAR 26.1(b) requires that every party to an appeal must identify on the Corporate Disclosure Statement required by Rule 26.1, Federal Rules of Appellate Procedure, every publicly owned corporation not a party to the appeal, if any, that has a financial interest in the outcome of the litigation and the nature of that interest. This information need be provided only if a party has something to report under that section of the LAR.

In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate shall provide a list identifying: 1) the debtor if not named in the caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is an active participant in the bankruptcy proceedings. If the debtor or the bankruptcy estate is not a party to the proceedings before this Court, the appellant must file this list. LAR 26.1(c).

The purpose of collecting the information in the Corporate Disclosure and Financial Interest Statements is to provide the judges with information about any conflicts of interest which would prevent them from hearing the case.

The completed Corporate Disclosure Statement and Statement of Financial Interest Form must, if required, must be filed upon the filing of a motion, response, petition or answer in this Court, or upon the filing of the party's principal brief, whichever occurs first. A copy of the statement must also be included in the party's principal brief before the table of contents regardless of whether the statement has previously been filed. Rule 26.1(b) and (c), Federal Rules of Appellate Procedure.

If additional space is needed, please attach a new page.

(Page 1 of 2)

Pursuant to Rule 26.1 and Third Circuit LAR 26.1, makes the following disclosure:

Amicus Curiae Pacific Legal Foundation
_____
(Name of Party)

      1) For non-governmental corporate parties please list all parent corporations: None.

      2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock:

None.

      3) If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:

None to the knowledge of Amicus Curiae

      4) In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: 1) the debtor, if not identified in the case caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is active participant in the bankruptcy proceeding. If the debtor or trustee is not participating in the appeal, this information must be provided by appellant.

N/A

s/ Caleb R. Trotter
_____
(Signature of Counsel or Party)

Dated: 4/3/2024
_____

**rev: 09/2014**              (Page 2 of 2)

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................ ii

TABLE OF CITATIONS ............................................................. v

IDENTITY AND INTEREST OF AMICUS CURIAE ............................. 1

INTRODUCTION AND SUMMARY OF ARGUMENT ........................... 2

ARGUMENT ........................................................................... 3

   I.   S3292 Restricts Speech ............................................... 3

   II.  S3292 Restricts Speech in a Content-Based Manner ................... 10

CONCLUSION ...................................................................... 13

COMBINED CERTIFICATES ................................................... 14

# TABLE OF CITATIONS

**Page(s)**

## Cases

*American Soc'y of Journalists and Authors, Inc. v. Bonta*,
  15 F.4th 954 (9th Cir. 2021) .................................................................. 1

*Book Passage, et al. v. Becerra*,
  No. 4:17-cv-02723 (N.D. Cal. filed May 11, 2017) .............................. 7

*Byrum v. Landreth*,
  566 F.3d 442 (5th Cir. 2009) ................................................................. 8

*Expressions Hair Design v. Schneiderman*,
  581 U.S. 37 (2017) ........................................................................... 6, 7

*Holder v. Humanitarian Law Project*,
  561 U.S. 1 (2010) ................................................................................. 5

*Iancu v. Brunetti*,
  588 U.S. 388 (2019) ............................................................................. 1

*King v. Governor of New Jersey*,
  767 F.3d 216 (3d Cir. 2014) ............................................................. 5, 6

*MacDonald, et al. v. Sabando*,
  No. 3:23-cv-23044 (D.N.J. filed Dec. 13, 2023) .................................. 1

*Minneapolis Star & Tribune Co. v. Minnesota Comm'r of
  Revenue*, 460 U.S. 575 (1983) .............................................................. 10

*National Inst. of Family and Life Advocates v. Becerra*,
  585 U.S. 755 (2018) .............................................................................. 5

*Pacific Coast Horseshoeing Sch. v. Kirchmeyer*,
  961 F.3d 1062 (9th Cir. 2020) ............................................................. 11

*Pitt News v. Pappert*,
  379 F.3d 96 (3d Cir. 2004) ............................................................ 4, 7, 8

*Reed v. Town of Gilbert*,
  576 U.S. 155 (2015) ................................................................. 10, 12, 13

*Simon & Schuster, Inc. v. Members of N.Y. State Crime
  Victims Bd.*, 502 U.S. 105 (1991) ............................................ 10, 11, 12

*Sorrell v. IMS Health Inc.*,
  564 U.S. 552 (2011) ........................................................................... 3, 4

*United States v. Playboy Ent. Grp., Inc.,*
   529 U.S. 803 (2000) ........................................................................ 4, 10

*Upsolve, Inc. v. James,*
   604 F.Supp.3d 97 (S.D.N.Y. 2022) .................................................... 5

*Ward v. Rock Against Racism,*
   491 U.S. 781 (1989) ........................................................................ 12, 13

*Warren, et al. v. United States Dep't of Labor, et al.,*
   No. 2:24-cv-00007 (D. Ga. filed Jan. 16, 2024) ................................... 1

*Wollschlaeger v. Governor,*
   848 F.3d 1293 (11th Cir. 2017) ........................................................... 1

**Statutes**

N.J. Stat. Ann. § 56:8-228(a)(1) ............................................................ 2

**Rule of Court**

Federal Rule of Appellate Procedure 29 .................................................. 1

**Other Authorities**

38 C.F.R. § 14.629 ................................................................................. 2

Governor Murphy Press Statement, *Governor Murphy Signs
   Legislation to Protect Veterans and Their Families When
   Seeking Assistance with Veterans' Benefits*
   (Aug. 25, 2023), *Available at*
   www.nj.gov/governor/news/news/562023/20230825a.shtml ............ 8, 9

Margo Riser, *Assembly advances Kean and Matsikoudis
   measure protecting veterans seeking benefits from
   predatory business practices*, New Jersey Assembly
   Republicans (June 30, 2023), *available at*
   https://www.njassemblygop.com/assembly-advances-kean-
   and-matsikoudis-measure-protecting-veterans-seeking-
   benefits-from-predatory-business-practices/ ....................................... 8

## IDENTITY AND INTEREST OF AMICUS CURIAE[1]

Pacific Legal Foundation (PLF) is the nation's oldest public interest legal foundation that seeks to vindicate the principles of individualism, property rights, and separation of powers. Consistent with these goals, PLF attorneys have litigated cases involving the right of professionals, entrepreneurs, and small businesses to engage in occupational speech, including giving advice, *see, e.g.*, *MacDonald, et al. v. Sabando*, No. 3:23-cv-23044 (D.N.J. filed Dec. 13, 2023); *Warren, et al. v. United States Dep't of Labor, et al.*, No. 2:24-cv-00007 (D. Ga. filed Jan. 16, 2024); *American Soc'y of Journalists and Authors, Inc. v. Bonta*, 15 F.4th 954 (9th Cir. 2021), and participated as amicus curiae in such cases, *see, e.g.*, *Iancu v. Brunetti*, 588 U.S. 388 (2019); *Wollschlaeger v. Governor*, 848 F.3d 1293 (11th Cir. 2017) (en banc).

---

[1] Pursuant to Federal Rule of Appellate Procedure 29, no party's counsel authored this brief in whole or in part, no party or party's counsel contributed money intended to fund preparation or submission of the brief, and no person or entity—other than Amicus Curiae, its donors, or its counsel—contributed money intended to fund preparation or submission of the brief.

## INTRODUCTION AND SUMMARY OF ARGUMENT

New Jersey's S3292, P.L. 2023, c. 150, §§ 1–2, *codified at* N.J. Stat. Ann. § 56:8-228(a)(1), mandates that all businesses charging fees to military veterans for "advising or assisting" veterans with claims with the U.S. Department of Veterans Affairs (VA) must be accredited with the VA. But VA accreditation is not needed for ordinary discussions with veterans—whether professional or casual. VA accreditation is a highly involved process intended for agents, attorneys, and organizations seeking to directly represent veterans in proceedings before the VA. *See* 38 C.F.R. § 14.629.

Appellant Veterans Guardian VA Claim Consulting, LLC advises veterans in preparing claims with the VA. Because Veterans Guardian does not employ attorneys, represent veterans in the VA claims process, or file documents on veterans' behalf, it is not accredited by the VA. The district court below held that Plaintiffs-Appellants Veterans Guardian, Colonel John F. Rudman, and Sergeant Andre Jesus Soto were unlikely to succeed on the merits of their First Amendment speech claim. The court so held by concluding that S3292 does not regulate speech, and even if it did, does so in content-neutral fashion.

2

The district court erred on both counts. Regardless of whether S3292's primary target is unaccredited compensated advice, its direct effect is to prohibit speakers like Veterans Guardian from communicating with veterans. And because that speech burden depends on the content communicated—advice and assistance with veterans benefits—S3292 is subject to strict scrutiny. This Court should reverse the district court and hold that S3292 is a content-based speech restriction. Otherwise, government may be emboldened to burden more speech and restrict yet more advice offered by various professionals to willing clients.

## ARGUMENT

### I. S3292 Restricts Speech

The district court held that S3292 is directed only at conduct because its "primary purpose is to prevent unaccredited agents from *charging fees* for unaccredited services," and thus any regulation of speech was incidental. JA14 (original emphasis). But the court's holding ignores S3292's effects, as well as binding precedent establishing that laws *burdening* speech implicate the First Amendment just as those that directly restrict speech. *See, e.g.*, *Sorrell v. IMS Health Inc.*, 564 U.S. 552,

566 (2011) ("Lawmakers may no more silence unwanted speech by burdening its utterance than by censoring its content."); *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 812 (2000) ("Government's content-based burdens must satisfy the same rigorous scrutiny as its content-based bans.").

In *Sorrell*, a Vermont law forbade the sale of prescriber-identifying information from pharmacies, health insurers, and the like for marketing purposes, while permitting sales for research. 564 U.S. at 563. The Court recognized that the law burdened speech because the "law's express purpose and practical effect are to diminish the effectiveness of marketing by manufacturers of brand-name drugs." *Id*. at 565.

The same is true with S3292. While the law prohibits anyone who is unaccredited with the VA from charging fees to military veterans for "advising or assisting" veterans with VA claims, the practical effect of the law is to prevent unaccredited businesses from giving advice and assistance to veterans in New Jersey. JA114–JA115 ¶¶ 20, 21. Indeed, "[t]he very purpose of [S3292] is to discourage a form of speech ([paid VA claims advice to veterans]) that [New Jersey] regards as harmful." *Pitt News v. Pappert*, 379 F.3d 96, 106 (3d Cir. 2004) (opinion of Alito, J.).

4

Predictably, then, without being able to collect an appropriate fee, Veterans Guardian—a for-profit business—no longer advises veterans in New Jersey. JA114–JA115 ¶¶ 20, 21.

Courts have also found other laws speech-restrictive even though they purportedly targeted only conduct. For example, in *National Inst. of Family and Life Advocates v. Becerra* (*NIFLA*), 585 U.S. 755 (2018), a California law requiring crisis pregnancy centers to provide a notice to patients informing them of the availability of abortion and other services through various state programs was held to be a speech restriction and not a regulation of the practice of medicine. *Id.* at 762–63, 766, 769–71; *see also Holder v. Humanitarian Law Project*, 561 U.S. 1, 26–27 (2010) (federal law prohibiting "material support" to terrorist organizations was a content-based speech restriction); *Upsolve, Inc. v. James*, 604 F.Supp.3d 97, 112–13 (S.D.N.Y. 2022) (restrictions on out-of-court verbal advice by non-attorneys were regulations of speech).

This Court, in *King v. Governor of New Jersey*, 767 F.3d 216, 220 (3d Cir. 2014), *abrogated on other grounds by NIFLA*, 585 U.S. at 767–68, also correctly delineated the line between speech and conduct. There, licensed counselors challenged a New Jersey law prohibiting certain

controversial therapies with children under the age of 18. This Court held that verbal communications by mental health counselors ("talk therapy") are speech, not conduct. 767 F.3d at 225. Relying heavily on the Supreme Court's decision in *Humanitarian Law Project*, this Court rejected the notion that speech is "transmogrif[ied]" into conduct when it is spoken by a professional in the course of his or her professional duties. *Id*. at 228. While this Court acknowledged the concern that such a result may "mean that any regulation of professional counseling" may implicate the First Amendment, that concern was properly addressed in the scrutiny analysis because "speech is speech." *Id*. at 228–29.

The district court's reliance on *Expressions Hair Design v. Schneiderman*, 581 U.S. 37, 47 (2017), is misplaced. There, the Court posed a hypothetical requirement that all delis "charge $10 for their sandwiches," and noted that such a requirement would only regulate conduct (i.e., "the amount that a store could collect") even though delis would need to change language on menus or otherwise inform customers of the price. *Id*. In contrast, the law challenged in *Expressions Hair* regulated speech, not conduct, because it regulated "the communication of prices rather than prices themselves." *Id*. at 48. S3292 is more like the

6

law found to regulate speech in *Expressions Hair*, rather than the hypothetical deli regulation, because it does not regulate how much can be charged for advising veterans; instead, it bans unaccredited businesses from charging any amount only if they converse with New Jersey veterans about their VA claims.

Were S3292 found to not be a restriction of speech, that would set the stage for all kinds of speech to be limited in the guise of regulating conduct. For example, imagine a scenario in which unlicensed publishers are prohibited by law from selling books. Such a scenario is not far-fetched. *See, e.g.*, *Book Passage, et al. v. Becerra*, No. 4:17-cv-02723 (N.D. Cal. filed May 11, 2017) (case dismissed following repeal of law effectively prohibiting sales of autographed books). Under the district court's analysis of S3292, even such a ban would simply be a regulation of conduct, i.e., the unlicensed sale of books, rather than a restriction on creating and disseminating speech. Fortunately, that dangerous outcome is foreclosed by precedent recognizing that bans on paid speech can effectively silence speech. *See, e.g.*, *Pitt News*, 379 F.3d at 111 ("The threat to the First Amendment arises from the imposition of financial burdens that may have the effect of influencing or suppressing

7

speech[.]"); *cf. Byrum v. Landreth*, 566 F.3d 442, 447 (5th Cir. 2009) (prohibiting unlicensed interior designers from describing themselves as "interior designers" violated First Amendment because the restriction would permit government to "license speech and reduce its constitutional protection by means of the licensing alone"). S3292 poses the exact threat warned of in *Pitt News*.

New Jersey lawmakers themselves confirmed that silencing certain speakers was the intended purpose of S3292. For example, Assemblyman Sean Kean, a co-sponsor of the Assembly version of S3292 (A3286), opined that the law "will discourage the bad actors out there." Margo Riser, *Assembly advances Kean and Matsikoudis measure protecting veterans seeking benefits from predatory business practices*, New Jersey Assembly Republicans (June 30, 2023).[2] And upon the signing of S3292 into law by Governor Phil Murphy, Senator Shirley Turner was concerned that "veterans know there are plenty of public offices and non-profits able to assist them in obtaining their VA benefits." Governor Murphy Press Statement, *Governor Murphy Signs Legislation to Protect*

---

[2] *Available at* https://www.njassemblygop.com/assembly-advances-kean-and-matsikoudis-measure-protecting-veterans-seeking-benefits-from-predatory-business-practices/.

*Veterans and Their Families When Seeking Assistance with Veterans'*
*Benefits* (Aug. 25, 2023).[3] "Discouraging" certain businesses from
advising veterans, and pointing out alternative government-preferred
providers, are the natural consequences of prohibiting service providers
like Veterans Guardian from giving helpful advice for a fee to willing
veterans in New Jersey.

Here, Veterans Guardian does not seek to engage in the conduct of
serving as an agent or attorney for any veterans or represent them in any
manner before the VA. Instead, Veterans Guardian seeks to speak to
veterans about how to best pursue their claims. But due to S3292's ban
on compensation for providing such advice, Veterans Guardian's speech
is burdened such that it is effectively banned. If the "talk therapy" and
out-of-court legal advice by non-attorneys noted above is speech, then so
is advice to veterans on how to best pursue their claims with the VA.
Veterans Guardian's advice to clients is protected speech, not conduct.

---

[3] *Available at*
www.nj.gov/governor/news/news/562023/20230825a.shtml.

## II.    S3292 Restricts Speech in a Content-Based Manner

The district court alternatively held that if S3292 restricts speech, it does so in a content-neutral manner. JA15–JA16. That is also wrong. In *Reed v. Town of Gilbert*, 576 U.S. 155, 163–64 (2015), the Supreme Court clarified that if a law "'on its face' draws distinctions based on the message a speaker conveys," then it is content-based and subject to strict scrutiny. That is true regardless of whether the law regulates speech based on its "function or purpose" or directly singles out particular subject matter. Strict scrutiny even applies where government burdens, rather than bans, speech on the basis of content. *Playboy Ent. Grp.*, 529 U.S. at 812; *see also Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 115 (1991) (content-based financial burden); *Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Revenue*, 460 U.S. 575, 579 (1983) (speaker-based financial burden).

In *Simon & Schuster*, New York's "Son of Sam" law—which required income earned by criminals from works describing their crimes be held by the state crime victims board in escrow—violated the First Amendment as a content-based financial burden on speech. 502 U.S. at 108, 116. The New York law targeted income "derived from expressive

activity for a burden the State places on no other income" and was "directed only at works with a specified content." *Id*. at 116. Such burdens received strict scrutiny because they "operate as disincentives to speak" and "raise the specter that the government may drive certain ideas … from the marketplace." *Id*. at 116–17.

Here, similar to New York's unconstitutional Son of Sam law, S3292 prohibits unaccredited providers like Veterans Guardian from "receiv[ing] compensation for advising or assisting any individual with regard to any veterans benefits matter." That targeting of income "derived from expressive activity," *Simon & Schuster*, 502 U.S. at 116, financially burdens speech on a specific subject matter (veterans benefits) and by particular speakers (non-VA-accredited advice-givers). *See Pacific Coast Horseshoeing Sch. v. Kirchmeyer*, 961 F.3d 1062, 1071–72 (9th Cir. 2020) (strict scrutiny applies where law distinguishes between speakers to pick regulatory "winners and losers"). Should Veterans Guardian speak with New Jersey veterans about any topic other than veterans benefits, then S3292 does not apply. Likewise, should a VA-accredited provider give advice to a New Jersey veteran about veterans benefits, then S3292's prohibitions do not apply. Thus,

S3292 does not merely "raise the specter that the government may drive certain ideas … from the marketplace," *Simon & Schuster*, 502 U.S. at 116–17, it does precisely that by excluding unaccredited providers from the market. As a result, S3292 "'on its face' draws distinctions based on the message a speaker conveys," and is subject to strict scrutiny. *Reed*, 576 U.S. at 163–64.

The district court held otherwise by confusing the state of the law as clarified by *Reed*. *See* JA16 ("to determine whether a statute is content neutral, a court must focus on the legislature's purpose for enacting it"). Courts are only to consider a legislature's motives in enacting a speech restriction *after* determining whether a challenged law is facially content-neutral. *Reed*, 576 U.S. at 166 ("[W]e have repeatedly considered whether a law is content neutral on its face before turning to the law's justification or purpose."). Therefore, what lawmakers had in mind in enacting S3292 is irrelevant for purposes of determining whether the law is facially content-based or content-neutral.

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989), is not to the contrary. As the Court clarified in *Reed*, *Ward* "recognized a separate and additional category of laws that, though facially content neutral, will be

considered content-based" when they cannot be "justified without reference to the content of the regulated speech," or were adopted "because of disagreement with the message convey[ed]." 576 U.S. at 164 (quoting *Ward*, 491 U.S. at 791). Thus, the district court should only have considered the legislature's "principal consideration" of preventing unaccredited businesses like Veterans Guardian from being compensated, *see* JA16, if it first determined that S3292 was facially content-neutral. But the district court made no such determination, instead finding content-neutrality based entirely on the legislature's supposed compensation-focused purpose. Because S3292 directly regulates only paid advice concerning veterans benefits matters, it is content-based on its face.

## CONCLUSION

The district court's decision should be reversed.

DATED:  April 3, 2024.

Respectfully submitted,

By   s/ *Caleb R. Trotter*
Caleb R. Trotter
Cal. Bar No. 305195
PACIFIC LEGAL FOUNDATION
555 Capitol Mall, 1290
Sacramento CA 95814
(916) 419-7111
CTrotter@pacificlegal.org

*Attorney for Amicus Curiae*

13

# COMBINED CERTIFICATES

I hereby certify:

that I, Caleb R. Trotter, am a member in good standing of the bar of this Court;

that this brief complies with the requirements of Fed. R. App. P. 32(a)(5)(A) because it has been prepared in 14 point Century Schoolbook font;

that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7) and 29(a)(5) because it contains 2,427 words;

that Pacific Legal Foundation's documents are scanned for viruses with Symantec Endpoint Protection and this document contains no known viruses;

that paper copies of this document will be identical to the electronic version; and

that on April 3, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

 s/ *Caleb R. Trotter*
Caleb R. Trotter