NO. 24-1097

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

VETERANS GUARDIAN VA CLAIM CONSULTING, LLC;
JOHN F. RUDMAN; ANDREW JESUS SOTO,

Plaintiffs-Appellants,

v.

MATTHEW J. PLATKIN, IN HIS OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF NEW JERSEY,

Defendant-Appellee.

On Appeal From The United States District Court
For The District Of New Jersey
No. 3:23-cv-20660-MAS
The Honorable Michael A. Shipp

## AMICI CURIAE BRIEF OF WASHINGTON, COLORADO,
## CONNECTICUT, DELAWARE, DISTRICT OF COLUMBIA,
## ILLINOIS, MAINE, MARYLAND, MICHIGAN, MINNESOTA,
## NEVADA, NEW MEXICO, OREGON, PENNSYLVANIA, AND
## RHODE ISLAND IN SUPPORT OF DEFENDANT-APPELLEE

ROBERT W. FERGUSON
*Attorney General*
*State of Washington*

BRIAN H. ROWE, WSBA #56817
*Assistant Attorney General*
CRISTINA SEPE, WSBA #53609
*Deputy Solicitor General*
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744
Brian.Rowe@atg.wa.gov
Cristina.Sepe@atg.wa.gov

*(Counsel listing continues on signature page.)*

# **TABLE OF CONTENTS**

I.    IDENTITY AND INTEREST OF AMICI CURIAE ......................................1

II.   SUMMARY OF ARGUMENT .........................................................2

III.  ARGUMENT ............................................................................3

   A.  States Across the Country Similarly Protect Veterans from
       Financial Exploitation by Unlicensed Actors Who Target
       Veterans' Disability Benefits ...................................................3

   B.  States Have a Significant Interest in Protecting Veterans from
       the Loss of Disability Benefits .................................................14

IV.   CONCLUSION .........................................................................16

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Goldfarb v. Va. State Bar*,
    421 U.S. 773 (1975) ....................................................................... 1

*Heffner v. Murphy*,
    745 F.3d 56 (3d Cir. 2014) ......................................................... 15

*Lewis v. BT Inv. Managers, Inc.*,
    447 U.S. 27 (1980) ...................................................................... 15

*Nat'l Ass'n of Radiation Survivors v. Derwinski*,
    994 F.2d 583 (9th Cir. 1992) ...................................................... 15

*Ohralik v. Ohio State Bar Ass'n*,
    436 U.S. 447 (1978) ....................................................................... 1

*Pers. Adm'r of Mass. v. Feeney*,
    442 U.S. 256 (1979) .................................................................... 14

*Regan v. Tax'n With Representation of Wash.*,
    461 U.S. 540 (1983) .................................................................... 14

*Walters v. Nat'l Ass'n of Radiation Survivors*,
    473 U.S. 305 (1985) .................................................................... 15

## <u>Statutes</u>

38 U.S.C. § 5901 .............................................................................. 4

38 U.S.C. § 5901(a) ......................................................................... 9

38 U.S.C. § 5904(c)(1) .................................................................. 15

38 U.S.C. § 5904(c)(4) .................................................................... 4

38 U.S.C. § 5904(d)(1) .................................................................... 4

815 Ill. Comp. Stat. 505/2YYY ....................................................... 13

Act of March 23, 1792, ch. 11, § 6, 1 Stat. 245 ........................... 4, 14

Honoring our PACT Act of 2022, Pub. L. No. 117-168, 136 Stat. 1759
  (2022) ......................................................................................... 3

Iowa Code § 546B.3 ....................................................................... 12

Me. Stat. tit. 37-B, § 12 ................................................................. 13

Me. Stat. tit. 37-B, § 12(2)(A) ....................................................... 13

Me. Stat. tit. 37-B, § 12(4) ............................................................ 13

N.J. Stat. § 56:8-228 ....................................................................... 2

N.Y. Gen. Bus. Law § 349-f ........................................................... 12

Wash. Rev. Code § 19.335.005 ...................................................... 10

Wash. Rev. Code § 19.335.020 .................................................... 9, 11

Wash. Rev. Code § 19.335.050 ...................................................... 11

## Other Authorities

H.B. 272, 152nd General Assembly (Del. 2024),
  https://legis.delaware.gov/BillDetail/
  140818#:~:text=Bill%20Details&text=This%20act%20prohibits%20per
  sons%20from,our%20nation%20in%20the%20military .............................. 14

Joshua Friedman & Krystle Good, *WARNO: They call themselves
  "coaches" or "consultants" and advertise their ability to assist you
  with your VA benefits claim but may not be accredited to practice
  before the VA*, Consumer Financial Protection Bureau (Feb. 15, 2023),
  https://www.consumerfinance.gov/about-us/blog/coaches-consultants-
  advertise-ability-to-assist-with-va-benefits-claim-but-may-not-be-
  accredited/ ................................................................................... 5

*Legislative Presentation of Veterans of Foreign Wars of the United States and Multiple VSOs*, Joint Hearing Before the Committees on Veterans' Affairs, 118th Congress, Second Session (Mar. 6, 2024), https://www.veterans.senate.gov/services/files/2AE71011-67FA-44F9-A397-5F5B524211CC ................................................................................. 8

Letter From 44 State Attorneys General to Congressional Leaders Re: Support for Passing the G.U.A.R.D. VA Benefits Act (Aug. 8, 2023) ...... 8, 9

Lisa Rein, *Veterans became eligible for billions. These firms saw a chance to profit.* The Washington Post (May 23, 2024), https://www.washingtonpost.com/politics/2024/05/23/va-benefits-for-profit-companies-pact-act/ ................................. 6

Prepared Statement of the Federal Trade Commission, *Veterans Consumer Protection: Preventing Financial Exploitation of Veterans and Their Benefits*, U.S. Senate Veterans' Affairs Committee, 118th Congress, First Session (Apr. 19, 2023), https://www.ftc.gov/system/files/ftc_gov/pdf/p210100testimonyvetsconsumerprotection.pdf ........................................................................... 8

S.B. 159, 2024 Reg. Sess. (La. 2024), https://legis.la.gov/legis/BillInfo.aspx?s=24RS&b=SB159&sbi=y ............. 14

U.S. Dep't of Veterans Affairs, *Fraud Prevention*, https://benefits.va.gov/BENEFITS/fraud-prevention.asp (last visited May 24, 2024) ................................................................................................ 5

U.S. Dep't of Veterans Affairs, *Pension Poaching Prevention* (updated May 2022), https://benefits.va.gov/BENEFITS/factsheets/limitedincome/pension-poaching.pdf ........................................................................................... 4

U.S. Dep't of Veterans Affairs, *The PACT Act and your VA benefits*, https://www.va.gov/resources/the-pact-act-and-your-va-benefits/ (last visited May 24, 2024) ...................................................................................... 7

U.S. Dep't of Veterans Affairs, *The VA Claim Process After You File Your Claim*, https://www.va.gov/disability/after-you-file-claim/ (last visited May 24, 2024) ................................................................................. 6

U.S. Dep't of Veterans Affairs, *VA to grant 1 millionth benefit claim for Veterans and their survivors under the PACT Act* (May 21, 2024), https://news.va.gov/press-room/va-to-grant-1-millionth-benefit-claim-for-veterans-and-their-survivors-under-the-pact-act/ ..................................... 7

Veterans of Foreign Wars, *At What Cost? – Ensuring Quality Representation in the Veteran Benefit Claims Process* (Apr. 27, 2022), https://www.vfw.org/advocacy/national-legislative-service/congressional-testimony/2022/4/at-what-cost-ensuring-quality-representation-in-the-veteran-benefit-claims-process .................................... 5

Veterans of Foreign Wars, *Steer Clear of VA 'Claim Sharks'* (June 4, 2021), https://www.vfw.org/media-and-events/latest-releases/archives/2021/6/steer-clear-of-va-claim-sharks ............................... 6

Wash. State Dep't of Veterans Affairs, Claims Assistance, https://dev-dva-internet.pantheonsite.io/veterans-service-members-and-their-families/veterans-benefits/claims-assistance (last visited May 24, 2024) ............................................................................. 11

Wash. State Dep't of Veterans Affairs, County Map, https://www.dva.wa.gov/resources/county-map (last visited May 24, 2024) ............................................................................. 11

## I.   IDENTITY AND INTEREST OF AMICI CURIAE

Washington, Colorado, Connecticut, Delaware, District of Columbia, Illinois, Maine, Maryland, Michigan, Minnesota, Nevada, New Mexico, Oregon, Pennsylvania, and Rhode Island (Amici States) submit this brief in support of Defendant-Appellee Attorney General Platkin. Amici States have a strong interest in this case because, like New Jersey, they have enacted, enforced, or urged the passage of laws protecting veterans from financial exploitation by unaccredited businesses, known as claim sharks or pension poachers, who sap disability benefits that belong to veterans.

States have broad authority to restrict unlicensed profiteering as part of their "power to protect the public health, safety, and other valid interests . . . ." *Goldfarb v. Va. State Bar*, 421 U.S. 773, 792 (1975). That power—to "regulate commercial activity deemed harmful to the public," *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978), is particularly critical where, as here, States seek to protect veterans from predatory practices that drain the disability benefits they deserve. Amici States seek to safeguard their authority to prevent unaccredited individuals from extracting fees outside of the regulatory supervision of the Department of Veterans Affairs (VA) system or otherwise diverting veterans' benefits. Amici States thus share a compelling interest in

1

protecting veterans—a public interest that weighs heavily in favor of upholding laws like the one challenged here against claims under the First Amendment.

## II.    SUMMARY OF ARGUMENT

Amici States submit this brief to emphasize their compelling interest behind laws like S3292: protecting veterans from unlawful financial exploitation.[1]

Veterans are particularly vulnerable to financial exploitation as they go through the process of claiming disability benefits. Though veterans service organizations offer free assistance to veterans preparing claims, unlawful profiteers seek to charge veterans for what should be free and divert the disability benefits due to them. Federal law prohibits this but lacks an enforcement mechanism.

Enter the States. New Jersey and many Amici States have stepped in to fill the enforcement gap by enacting laws that track the federal restrictions with state enforcement mechanisms in order to prosecute claim sharks under state consumer protection laws. These state laws and enforcement actions play key roles in protecting veterans from unlawful financial exploitation in the preparation or appeal of disability claims. These state laws do not prohibit

_____

[1] S3292 is codified at N.J. Stat. § 56:8-228, but for ease of reference will be referred to as S3292.

communication between veterans and persons wishing to advise them, but instead prohibit charging fees that are likewise prohibited by federal law.

The strong governmental interest in protecting veterans from financial exploitation goes back to the first decades of this country. The governmental interest in protecting veterans' benefits is just as strong as its interest in providing them. New Jersey and Amici States have advanced this strong interest by enacting laws to protect veterans from financial exploitation. Without the protection of these state laws, veterans have been and will continue to face exploitation and diminution of their disability benefits at the hands of claim sharks. New Jersey's law rests on a compelling interest shared by Amici States and should be upheld against Veterans Guardian's challenge.

## III.   ARGUMENT

### A.   States Across the Country Similarly Protect Veterans from Financial Exploitation by Unlicensed Actors Who Target Veterans' Disability Benefits

The federal government provides disability benefits for veterans and recently made it easier for veterans to obtain benefits for certain conditions. *See* Honoring our PACT Act of 2022, Pub. L. No. 117-168, 136 Stat. 1759 (2022). From the earliest days of the United States through the present, veterans' benefits have been targeted by rent-seekers who wish to part veterans

from their money, and government has justly stepped in to curtail such behavior. *See* Act of March 23, 1792, ch. 11, § 6, 1 Stat. 245 (prohibiting the "sale, transfer or mortgage" of soldiers' pensions before they became due); U.S. Dep't of Veterans Affairs, *Pension Poaching Prevention* (updated May 2022), https://benefits.va.gov/BENEFITS/factsheets/limitedincome/pension-poaching.pdf. Veterans are particularly vulnerable to financial exploitation as they navigate the claims process before the VA.

Federal law prohibits anyone from representing a veteran in preparing, presenting, or prosecuting a claim for disability benefits unless the person is accredited by the VA. 38 U.S.C. § 5901. Accredited attorneys or agents may charge fees for assisting a veteran prosecuting a claim for services only after a decision has been made, and any fees must be documented in a written agreement filed with the VA and must not exceed 20 percent of past-due benefits. 38 U.S.C. § 5904(c)(4), (d)(1).

In spite of these federal prohibitions and restrictions, businesses and individuals holding themselves out as "coaches" or "consultants" seek to exploit veterans by taking a share of their disability benefits in exchange for "assistance" that veteran service organizations typically provide for free. *See* Joshua Friedman & Krystle Good, *WARNO: They call themselves "coaches"*

*or "consultants" and advertise their ability to assist you with your VA benefits claim but may not be accredited to practice before the VA*, Consumer Financial Protection Bureau (Feb. 15, 2023), https://www.consumerfinance.gov/about-us/blog/coaches-consultants-advertise-ability-to-assist-with-va-benefits-claim-but-may-not-be-accredited/. These actors operate outside of the VA system, thereby avoiding accreditation, operating without supervision, and never submitting their fee agreements to the VA for scrutiny. Though they often advertise a higher success rate, the actual services they provide are not better than those that veteran service organizations provide for free. *See, e.g.*, Veterans of Foreign Wars, *At What Cost? – Ensuring Quality Representation in the Veteran Benefit Claims Process* (Apr. 27, 2022), https://www.vfw.org/advocacy/national-legislative-service/congressional-testimony/2022/4/at-what-cost-ensuring-quality-representation-in-the-veteran-benefit-claims-process. And though claim sharks often advertise quicker decisions on initial claims, the actual timeline for the VA to decide claims cannot be quickened by involvement of a claim shark. *See, e.g.* U.S. Dep't of Veterans Affairs, *Fraud Prevention*, https://benefits.va.gov/BENEFITS/fraud-prevention.asp (last visited May 24, 2024) ("Predatory companies may promise a faster turnaround when using their services for filing VA claims.");

U.S. Dep't of Veterans Affairs, *The VA Claim Process After You File Your Claim*, https://www.va.gov/disability/after-you-file-claim/ (last visited May 24, 2024) (setting out the claims process).

Claim sharks have profited handsomely from veterans. As many as 100 companies have made hundreds of millions of dollars despite federal law that prohibits charging veterans for applying for benefits. *See* Lisa Rein, *Veterans became eligible for billions. These firms saw a chance to profit.* The Washington Post (May 23, 2024), https://www.washingtonpost.com/politics/2024/05/23/va-benefits-for-profit-companies-pact-act/. These companies often "charg[e] five times the amount of the veteran's retroactive compensation, potentially costing him or her thousands of dollars." Veterans of Foreign Wars, *Steer Clear of VA 'Claim Sharks'* (June 4, 2021), https://www.vfw.org/media-and-events/latest-releases/archives/2021/6/steer-clear-of-va-claim-sharks; *see also* Opening Br. at 8, ECF No. 23-1 (describing Veterans Guardian's fee as five times the increase in monthly disability benefits). Investigative reports have revealed "a booming industry that charges veterans anywhere from $5,000 to $20,000 for help filing disability claims that by law should be free." Rein, *supra* at 6.

The recent passage of the PACT Act, described by the VA as "perhaps the largest health care and benefit expansion in VA history," has widened access to benefits for veterans impacted by toxic exposures while serving our country. U.S. Dep't of Veterans Affairs, *The PACT Act and your VA benefits*, https://www.va.gov/resources/the-pact-act-and-your-va-benefits/ (last visited May 24, 2024). The VA has approved 1 million claims under the new law, totaling about $5.7 billion in benefits to veterans and their survivors. U.S. Dep't of Veterans Affairs, *VA to grant 1 millionth benefit claim for Veterans and their survivors under the PACT Act* (May 21, 2024), https://news.va.gov/press-room/va-to-grant-1-millionth-benefit-claim-for-veterans-and-their-survivors-under-the-pact-act/.

Because there is no federal mechanism to enforce federal law on the provision of claims assistance to veterans, this illegal and exploitative conduct may go unchecked. Indeed, the threat posed by this conduct is rising. In 2022, the Federal Trade Commission tracked more than 190,000 reports of fraud loss from the military community, totaling more than $414 million. *See* Prepared Statement of the Federal Trade Commission, *Veterans Consumer Protection: Preventing Financial Exploitation of Veterans and Their Benefits*, U.S. Senate Veterans' Affairs Committee, 118th Congress, First Session (Apr. 19, 2023),

https://www.ftc.gov/system/files/ftc_gov/pdf/p210100testimonyvetsconsumerp
rotection.pdf. And benefits from the PACT Act have resulted in a proliferation
of unaccredited entities illegally charging veterans to file claims for disability
benefits. *See Legislative Presentation of Veterans of Foreign Wars of the
United States and Multiple VSOs*, Joint Hearing Before the Committees on
Veterans' Affairs, 118th Congress, Second Session (Mar. 6, 2024),
https://www.veterans.senate.gov/services/files/2AE71011-67FA-44F9-A397-
5F5B524211CC.

Given the gap in enforcement leaving resident veterans vulnerable
against this rising threat, a bipartisan group of 44 State Attorneys General
recently urged Congress to enact legislation reinstating criminal penalties for
unaccredited actors who exploit veterans seeking disability benefits. *See* Letter
From 44 State Attorneys General to Congressional Leaders Re: Support for
Passing the G.U.A.R.D. VA Benefits Act (Aug. 8, 2023) (attached as an
Appendix). The Attorneys General explained that the lack of criminal penalties
left federal enforcers "virtually powerless to enforce the law" and "left the door
open for unaccredited, often unscrupulous, actors to swoop in and turn what
had been created as a benefit for veterans into profitable businesses that
targeted those veterans and their benefits." *Id.* at 2. These unaccredited actors

"boast quicker response times and better or even guaranteed results" without basis. *Id.* They sidestep the federal accreditation requirement to "avoid oversight or accountability." *Id.* The State Attorneys General also expected that the newly enacted PACT Act would bring an influx of new claims, and an influx of claim exploitation by unaccredited actors would follow. *Id.* at 3. Accordingly, the letter urged Congress to "protect our veterans, and their families, from unaccredited predatory actors" by reinstating criminal penalties through new legislation. *Id.*

In the absence of federal legislation reinstating penalties, several States have stepped in with state consumer protection laws that restrict illegal and exploitative businesses from charging veterans for claims assistance. These laws protect veterans from those who would otherwise drain their benefits, tracking and giving effect to federal law. *Compare, e.g.*, Wash. Rev. Code § 19.335.020 ("A person may not . . . [r]eceiv[e] compensation for advising or assisting another person with a veterans' benefit matter"), *with* 38 U.S.C. § 5901(a) ("no individual may act as an agent . . . in the preparation . . . of any claim"). Under these laws, putative advisers and veterans are free to communicate with each other, but veterans cannot be charged fees prohibited by federal law. By restricting the ability of claim sharks to extract fees from

veterans, these laws preserve the integrity of the VA system and its state counterparts, channeling veterans to free veteran service organizations or well-regulated and supervised service providers who can only charge fees under certain conditions designed to prevent exploitation.

In short, New Jersey's law is no outlier. Described below are some similar laws of States, including Amici States, that restrict the ability of unaccredited businesses to charge veterans for advice or assistance in obtaining disability benefits.

In 2014, Washington enacted the Pension Poacher Prevention Act, by a margin of 97-to-1 in the House and unanimously in the Senate. *See* Wash. Rev. Code § 19.335 *et seq.* Washington found that the practice of "using the allure of untapped benefits from the [VA] to market products and services substantially affects the public interest" as it threatens "the ability of veterans or their surviving spouses to appropriately plan their finances or care." Wash. Rev. Code § 19.335.005. In view of the "lack of regulation of persons who provide advice related to veterans' benefits," Washington's law aims to "restrict how individuals receive compensation and remuneration for providing assistance with veterans' benefit-related services." *Id.* The law specifically prohibits a person from "receiving compensation for advising or assisting

another person with a veterans' benefit matter, except as permitted under Title 38 of the United States Code," and makes a violation of the Pension Poachers Prevention Act also a violation of the state's consumer protection act. Wash. Rev. Code § 19.335.020, .050.

By prohibiting compensation "except as permitted under Title 38 of the United States Code," Wash. Rev. Code § 19.335.020, the Pension Poachers Prevention Act aims to keep paid assistance for veterans' benefit claims under the standards and supervision of the VA, which carefully screens service providers and strictly regulates the fees they may charge, if any. Through the Washington State Department of Veterans Affairs (WDVA), Washington funds a robust fee-free service network for veterans seeking claims assistance in every county in the State. *See* Wash. State Dep't of Veterans Affairs, County Map, https://www.dva.wa.gov/resources/county-map (last visited May 24, 2024). In a recent one-year period, the WDVA assisted in the filing of almost 10,000 claims, helping Washington veterans obtain over $83 million in benefits. *See* Wash. State Dep't of Veterans Affairs, Claims Assistance, https://dev-dva-internet.pantheonsite.io/veterans-service-members-and-their-families/veterans-benefits/claims-assistance (last visited May 24, 2024).

The Pension Poachers Prevention Act protects veterans by channeling the provision of claims-assistance to these established and regulated networks.

Since enacting the Pension Poachers Prevention Act, Washington has regularly received and investigated complaints, including against Plaintiff-Appellant Veterans Guardian. Though Washington has successfully stopped several claim shark operations and has recovered money for veterans, violations remain a serious concern.

Since 2018, Iowa, too, has prohibited "[r]eceiv[ing] compensation for advising or assisting another person with a veterans' benefit matter, except as permitted under Tit. 38 of the United States Code." Iowa Code § 546B.3.

Similarly, in 2019, New York enacted a law prohibiting any entity from "receiv[ing] compensation for advising or assisting any party with any veterans' benefits matter, except as permitted under title 38 of the United States code[.]" N.Y. Gen. Bus. Law § 349-f. New York's law specifies that "[n]o entity shall receive any fees for any services rendered before the date on which a notice of disagreement is filed with respect to the party's case," and makes a violation a deceptive act for purpose of the State's consumer protection law. *Id.*

Since 2022, Illinois law has likewise prohibited "any person providing veteran or military benefits services" from "[c]harg[ing] fees or expenses" in violation of federal regulations. 815 Ill. Comp. Stat. 505/2YYY. Violations of Illinois's law constitute unlawful practices for purposes of the State's consumer protection law. *Id.*

Likewise, in 2024, Maine enacted "An Act to Prohibit Receiving Compensation for Assisting a Person to Obtain Veterans' Benefits Except as Permitted Under Federal Law." Me. Stat. tit. 37-B, § 12. Among other prohibitions, the law provides that "[a] person may not . . . [r]eceive compensation for preparation, presentation or prosecution of, or advising, consulting or assisting an individual with, a veterans' benefits matter, except as permitted under federal law." *Id.* § 12(2)(A). A violation of the law is "a violation of the Maine Unfair Trade Practices Act." *Id.* § 12(4).

Most recently, Louisiana's Legislature has passed a consumer protection law restricting services provided to veterans for compensation, by delineating when a business is prohibited from charging for services to veterans, capping compensation, and requiring written disclosures. *See* S.B. 159, 2024 Reg. Sess.

(La. 2024), https://legis.la.gov/legis/BillInfo.aspx?s=24RS&b=SB159&sbi=y.

The bill is awaiting signature by the Governor. *See id.*[2]

**B.     States Have a Significant Interest in Protecting Veterans from the Loss of Disability Benefits**

The governmental interest in protecting veterans from financial exploitation has existed since this country had veterans to care for—and since veterans had benefits to exploit. The "policy of compensating veterans for their past contributions by providing them with numerous advantages . . . has 'always been deemed to be legitimate.'" *Regan v. Tax'n With Representation of Wash.*, 461 U.S. 540, 551 (1983) (citing *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 n.25 (1979)). Hand in hand with the governmental interest in providing veterans benefits, the governmental interest in protecting veterans' benefits goes back to the earliest days of the United States.

As early as 1792, Congress recognized the problem of pension poaching—the "sale, transfer or mortgage . . . of the pension . . . before the same shall become due"—and acted to protect veterans by making transfers invalid. *See* Act of March 23, 1792, ch. 11, § 6, 1 Stat. 245. Since the

---

[2] Other States are considering similar laws. *See, e.g.*, H.B. 272, 152nd General Assembly (Del. 2024), https://legis.delaware.gov/BillDetail/140818#:~:text=Bill%20Details&text=This%20act%20prohibits%20persons%20from,our%20nation%20in%20the%20military.

Civil War, the government has further acted on its interest in protecting veterans by limiting the fees an attorney may charge them for representation in claiming benefits, "so that the claimant would receive the entirety of the award without having to divide it with a lawyer." *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 321 (1985); *see also Nat'l Ass'n of Radiation Survivors v. Derwinski*, 994 F.2d 583, 589–90 (9th Cir. 1992), *as amended* (June 18, 1993) ("Congress continues to believe that the government has a strong interest in minimizing attorney participation in benefits proceedings before the VA."). Up through the present prohibition on charging fees to veterans for pre-decision claims assistance, *see* 38 U.S.C. § 5904(c)(1), the government has shown a strong interest in "'protect[ing] claimants' benefits' from being unnecessarily diverted[.]"[3] *Walters*, 473 U.S. at 322.

This long-standing governmental interest equally motivates state laws protecting veterans from claim sharks who seek to divert their benefits. Like the federal laws described above, the laws of several Amici States manifest a

---

[3] More generally, this Court has also recognized an "undoubtedly substantial" interest in protecting consumers from paying unlawful commissions to unlicensed actors operating in an otherwise regulated environment. *Heffner v. Murphy*, 745 F.3d 56, 92 (3d Cir. 2014). And the Supreme Court has recognized the "undoubtedly legitimate state interests" in "protecting the citizenry against fraud." *Lewis v. BT Inv. Managers, Inc.*, 447 U.S. 27, 43 (1980).

strong interest in protecting veterans from exploitation and diminution of their benefits. The federal VA and state counterparts establish a system designed to ensure that veterans obtain their rightful benefits without diversion to rent-seeking middlemen. To maintain the integrity of that system, unaccredited and unsupervised creditors must be kept out. By using state law and enforcement resources to restrict unlawful fee collections by claim sharks, New Jersey and Amici States have acted on their well-established interest in protecting veterans and preventing dilution of their benefits.

Veterans Guardian thus gravely errs in downplaying the "compelling (or substantial) government interest" behind laws like S3292. Opening Br. at 6, ECF No. 23-1. The laws of Amici States, like New Jersey's S3292, are motivated by their clearly compelling interest in protecting veterans from financial exploitation.

## IV.  CONCLUSION

New Jersey and Amici States share significant interests in protecting veterans from unlawful financial exploitation by claim sharks. For all the reasons explained by Attorney General Platkin, this compelling interest means that laws like S3292 pass any level of constitutional scrutiny. Answering Br. at 35–43 & n.6, ECF No. 46. New Jersey's interest is not only compelling but

also a strong public interest, weighing heavily against the preliminary injunction Veterans Guardian requested. *Id.* at 53. Accordingly, this Court should affirm the district court's order denying Veterans Guardian's motion for a preliminary injunction.

RESPECTFULLY SUBMITTED this 31st day of May 2024.

ROBERT W. FERGUSON
*Attorney General*
*State of Washington*

*/s/ Brian H. Rowe*
BRIAN H. ROWE, WSBA #56817
*Assistant Attorney General*
CRISTINA SEPE, WSBA #53609
*Deputy Solicitor General*
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744
Brian.Rowe@atg.wa.gov
Cristina.Sepe@atg.wa.gov

PHILIP J. WEISER
  *Attorney General*
  *State of Colorado*
1300 Broadway, 10th Floor
Denver, CO 80203

KATHLEEN JENNINGS
  *Attorney General*
  *State of Delaware*
820 N. French Street
Wilmington, DE 19801

KWAME RAOUL
  *Attorney General*
  *State of Illinois*
115 South LaSalle Street
Chicago, IL 60603

ANTHONY G. BROWN
  *Attorney General*
  *State of Maryland*
200 Saint Paul Place
Baltimore, MD 21202

KEITH ELLISON
  *Attorney General*
  *State of Minnesota*
102 State Capitol
75 Rev. Dr. Martin Luther King Jr. Blvd.
St. Paul, MN 55155

WILLIAM TONG
  *Attorney General*
  *State of Connecticut*
165 Capitol Avenue
Hartford, CT 06106

BRIAN L. SCHWALB
  *Attorney General*
  *District of Columbia*
400 6th Street, NW, Suite 8100
Washington, D.C. 20001

AARON M. FREY
  *Attorney General*
  *State of Maine*
6 State House Station
Augusta, ME 04333-0006

DANA NESSEL
  *Attorney General*
  *State of Michigan*
P.O. Box 30212
Lansing, Michigan 48909

AARON D. FORD
  *Attorney General*
  *State of Nevada*
100 North Carson Street
Carson City, NV 89701

RAÚL TORREZ
  *Attorney General*
  *State of New Mexico*
408 Galisteo Street
Santa Fe, NM 87501

ELLEN F. ROSENBLUM
  *Attorney General*
  *State of Oregon*
1162 Court Street NE
Salem, OR 97301

MICHELLE A. HENRY
  *Attorney General*
  *Commonwealth of Pennsylvania*
Strawberry Square, 16th Floor
Harrisburg, PA  17120

PETER F. NERONHA
  *Attorney General*
  *State of Rhode Island*
150 South Main Street
Providence, RI 02903

## CERTIFICATE OF BAR MEMBERSHIP

In compliance with Local Appellate Rule 28.3(d), I hereby certify that I am a member in good standing of the Bar of the United States Court of Appeals for the Third Circuit.

DATED this 31st day of May 2024.

*/s/ Brian H. Rowe*
BRIAN H. ROWE, WSBA #56817
Assistant Attorney General

# CERTIFICATE OF COMPLIANCE

I hereby certify the following:

The foregoing document is in 14-point Times New Roman proportional font in compliance with Rule 32(a)(5)(A) of the Federal Rules of Appellate Procedure.

The foregoing document contains 3,131 words in compliance with the type-volume limitations of Rules 29(a)(5) and 32(a)(7)(B) of the Federal Rules of Appellate Procedure.

The text of paper copies of the foregoing document will be identical to the electronic copy submitted to the Court through the CM/ECF system.

This file was scanned by Windows Defender for Endpoint (version 1.1.24040.1) integrated with Microsoft Intune (version 2405) and no malicious threat was discovered within the file.

DATED this 31st day of May 2024.

*/s/ Brian H. Rowe*
BRIAN H. ROWE, WSBA #56817
Assistant Attorney General

# CERTIFICATE OF SERVICE

I hereby certify that on this day I caused the foregoing document to be electronically filed with the Clerk of the Court using the Court's CM/ECF system which will send notice to all registered CM/ECF users attached to this case.

DATED this 31st day of May 2024.

*/s/ Brian H. Rowe*
BRIAN H. ROWE, WSBA #56817
Assistant Attorney General

# Appendix



PRESIDENT
**Dave Yost**
Ohio
Attorney General

PRESIDENT-ELECT
**Ellen F. Rosenblum**
Oregon
Attorney General

VICE PRESIDENT
**John Formella**
New Hampshire
Attorney General

IMMEDIATE PAST
PRESIDENT
**Josh Stein**
North Carolina
Attorney General

**Brian Kane**
Executive Director

1850 M Street NW
12th Floor
Washington, DC 20036
(202) 326-6000
www.naag.org

August 8, 2023

<u>Via E-mail</u>

The Honorable Kevin McCarthy       The Honorable Chuck Schumer
Speaker                            Majority Leader
House of Representatives           United States Senate
Washington, DC 20515              Washington, DC 20510


The Honorable Hakeem Jeffries      The Honorable Mitch McConnell
Minority Leader                   Minority Leader
House of Representatives           United States Senate
Washington, DC 20515              Washington, DC 20510

Re:    Support for Passing the G.U.A.R.D. VA Benefits Act

Dear Congressional Leaders:

The undersigned Attorneys General write to express our strong support for the passage of bipartisan legislative proposals included in, *H.R. 1139* and *S. 740*, both cited as the *Governing Unaccredited Representatives Defrauding VA Benefits Act* and otherwise referred to as the *G.U.A.R.D. VA Benefits Act*.

The history of the service and sacrifice of our nation's veterans is long and storied. This country and the freedoms we enjoy were built on those sacrifices. Our nation has long recognized its obligation to provide support and care for those veterans and their families as compensation for their many sacrifices. This nation has long provided that support and care through various VA benefits. However, some of those benefits make the veterans who have earned them targets for financial exploitation.

To ensure veterans received "responsible, qualified representation"[1] and assistance when applying for those benefits, federal laws were created requiring anyone who assists them in preparing, presenting, or prosecuting those claims to be properly accredited through the VA Office of General Counsel (OGC).[2] Those same laws govern whether, when, and how much veterans can be charged for that assistance.

In 2006, the criminal penalties for violating those laws were removed[3], leaving the OGC virtually powerless to enforce the law against anyone except those who *voluntarily* followed those laws and became accredited. That left the door open for unaccredited, often unscrupulous, actors to swoop in and turn what had been created as a benefit for veterans into profitable businesses that targeted those veterans and their benefits. Over the years, those unaccredited actors have proliferated throughout the VA benefits claims system at all levels.

Unaccredited actors advertise their services as superior to the free services offered by accredited actors, like veteran service officers, claims agents, and attorneys, who are trained, tested, supervised, regulated, or otherwise held accountable. They boast quicker response times and better or even guaranteed results, neither of which is based in fact or even remotely quantifiable.

Assisting or representing veterans and their families in preparing, presenting, and prosecuting claims for VA benefits is governed by federal statute and requires VA accreditation. So unaccredited actors advertise their services as "coaching" or "consultation" instead of assistance or representation to avoid oversight or accountability. Many use language in their advertising and their contracts indicating that the veteran will be doing all the work that requires accreditation and that the unaccredited actors are only there to answer questions or advise. In fact, they typically do everything except sign the claim. Conversely, other unaccredited actors do absolutely nothing except point the veteran to DIY websites and online videos that the veteran could have found themselves.

Regardless of how much or how little assistance unaccredited actors actually provide a veteran in preparing and presenting their claim, they all abandon those veterans when it comes to representation. At that point, often a critical one, those veterans are entirely on their own. Accredited actors stay with the veteran throughout the process and are accountable for their work.

Since they do not have access to the veteran's VA claim files, unaccredited actors sometimes require the veteran to share their VA system logins and passwords so they can

---

[1] 38 CFR 14.626.
[2] 38 USC 5904.
[3] P.L. 109-461.

monitor the claims process, know when benefits decisions are made, and know the amounts of those benefits so that they can calculate their cut. Additionally, they might have the veteran give them access to the checking or savings account where the benefits will be direct deposited, so that the company can immediately withdraw their fees from the account, sometimes before the veteran even learns that the money had been deposited.

With the recent passage and signing into law of the PACT Act, there is an expectation of a significant increase in filing applications or claims for benefits. In the first six months after the PACT Act became law, the VA received 124,127 completed PACT Act related claims for VA benefits, 122,130 from veterans and 1,999 from survivors. In just the first five months, there were 161,659 new enrollees in the Veterans Health Administration (VHA) system, representing an almost fifteen percent increase in the number of new enrollees over the same five-month period from the year before.[4]  Unaccredited actors see this potential influx of claims, especially those associated with the long list of new presumptive conditions, as a target-rich environment and an opportunity to further exploit veterans and their families without fear of punishment or reprisal, as evidenced by a recent and continuing barrage of internet, social media and even television advertisements referencing the recently enacted PACT Act and the Camp Lejeune Justice Act.

Any argument that the GUARD VA Benefits Act will take away a veteran's right to choose who they want to represent them or somehow limit their choices of representation is without merit.

While its opponents argue that the Act impinges upon veteran's right to choose who they wish to consult with or to represent them in the preparation, presentation, or prosecution of their attempts to obtain VA benefits, whether that be initial claims, claims for increases, or appeals of adverse decisions, on the contrary, it merely removes the ability of unaccredited, unregulated, and often unscrupulous actors to target and prey upon those veterans with impunity. It holds them accountable not just to the law but also to the veterans and their families by giving them options for redress when they find themselves victims of those same actors.

We urge the members of Congress, therefore, to reinstate those criminal penalties and to protect our veterans, and their families, from unaccredited predatory actors who seek to profit from veterans' service and sacrifice with total disregard for the laws designed to protect those veterans and their benefits. Our veterans deserve to be honored, not disproportionately targeted for financial victimization.

---

[4] [VA PACT Act Performance Dashboard](#)

The four co-sponsors of this letter, the attorneys general of California, Illinois, Ohio, and Tennessee, are joined by the undersigned attorneys general across the U.S. states and its territories.

Respectfully,

Rob Bonta
California Attorney General

Kwame Raoul
Illinois Attorney General

Dave Yost
Ohio Attorney General

Jonathan Skrmetti
Tennessee Attorney General

Treg R. Taylor
Alaska Attorney General

Fainu'ulelei Falefatu Ala'ilima-Utu
American Samoa Attorney General

Kris Mayes
Arizona Attorney General

Phil Weiser
Colorado Attorney General



William Tong

Connecticut Attorney General



Kathleen Jennings

Delaware Attorney General



Brian Schwalb

District of Columbia Attorney General



Ashley Moody

Florida Attorney General



Christopher M. Carr

Georgia Attorney General



Anne E. Lopez

Hawaii Attorney General



Raúl Labrador

Idaho Attorney General

Kris Kobach

Kansas Attorney General



Daniel Cameron

Kentucky Attorney General

Jeff Landry

Louisiana Attorney General

Aaron M. Frey

Maine Attorney General



Anthony G. Brown

Maryland Attorney General

Andrea Joy Campbell

Massachusetts Attorney General

Dana Nessel

Michigan Attorney General

Keith Ellison

Minnesota Attorney General

Lynn Fitch

Mississippi Attorney General



Aaron D. Ford

Nevada Attorney General



John M. Formella

New Hampshire Attorney General

Matthew J. Platkin

New Jersey Attorney General

Letitia James

New York Attorney General

Josh Stein

North Carolina Attorney General

Drew H. Wrigley

North Dakota Attorney General

Gentner Drummond

Oklahoma Attorney General



Ellen F. Rosenblum

Oregon Attorney General



Michelle Henry

Pennsylvania Attorney General

Peter F. Neronha

Rhode Island Attorney General



Alan Wilson

South Carolina Attorney General

Marty Jackley

South Dakota Attorney General



Angela Colmenero

Provisional Texas Attorney General

Sean D. Reyes

Utah Attorney General



Charity Clark

Vermont Attorney General

Jason S. Miyares

Virginia Attorney General

Robert W. Ferguson

Washington Attorney General

Patrick Morrisey

West Virginia Attorney General

Joshua L. Kaul

Wisconsin Attorney General

Bridget Hill

Wyoming Attorney General